IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT REES-EVANS, BRIAND PARENTEAU, JEROME RAPHAEL SIV, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMP GLOBAL CLEARING, LLC *et al.*,<br><br>Defendants. | No. 20-cv-07169<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Robert Rees-Evans, Briand Parenteau, and Jerome Raphael SIV (Plaintiffs) are individual investors who owned crude oil futures positions through separate brokerage accounts with AMP Global Clearing, LLC. R. 1, Compl. ¶ 26.[1] On April 20, 2020, the crude oil futures contract market which traded on the New York Mercantile Exchange (NYMEX) fell into negative balances[2] due to the economic shock caused by the COVID-19 pandemic, resulting in financial losses to Plaintiffs. *Id.* ¶ 38.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2] The Court may take "judicial notice of matters which are so commonly known within the community as to be indisputable among reasonable men, or which are capable of certain verification through recourse to reliable authority." *McCray v. Hermen*, 2000 WL 684197, at *2 n.1 (N.D. Ill. May 23, 2000) (quoting *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)); *see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

Plaintiffs brought this class action, individually and on behalf of all others similarly situated, against AMP Global Clearing, LLC, AMP Clearing, AMP Futures, AMP Global US, AMP Global USA, and Daniel Lee Culp (Defendants) alleging that Defendants violated the Commodity Exchange Act, 7 U.S.C. § 9 (the CEA), and associated regulations. Compl. ¶¶ 88, 97. Plaintiffs also allege breach of the implied covenant of good faith and fair dealing, negligence, gross negligence, and breach of contract. *Id.* ¶¶ 93, 101, 107, 112.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 13, Mot. Dismiss. For the reasons below, the Court grants Defendants' motion and dismisses Counts I and III of the Complaint without prejudice and the remaining counts with prejudice.

## Background

Plaintiffs are individual investors who owned crude oil futures positions through separate brokerage accounts with Defendants. Compl. ¶ 26.[3] Plaintiffs each signed a customer agreement, known as a Futures Client Agreement, with Defendants. *Id.* ¶¶ 10, 92; *see also* R. 13-2, Futures Client Agreement.[4] The

---

[3] The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[4] The Futures Client Agreement is attached as an exhibit to the motion to dismiss; although it is not attached to the complaint, it nonetheless is referred to in the complaint and is central to the allegations. Compl. ¶¶ 10, 60, 92. The Court therefore may consider the Futures Client Agreement at the motion to dismiss stage. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (on a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice") (internal citations omitted). Additionally, Plaintiffs do not argue that it would be improper for the Court to consider the Futures Client Agreement at this stage. *See* R. 15, Resp.

2

investments at issue are futures and options on futures contracts for the May NYMEX Light Sweet May 2020 Crude Oil contract and E-Mini Light Sweet Crude Oil futures. *Id.* ¶¶ 26, 32. "A futures contract is a legally binding agreement to buy or sell a standing asset on a specific date or during a specific month." *Id.* ¶ 27. Trading in futures contract is facilitated through a futures exchange. *Id.* Plaintiffs' investments were substantial long-term positions traded on the Chicago Mercantile Exchange (the CME). *Id.* ¶¶ 30–32.

On April 8, 2020, the CME published a regulatory advisory to "let the market know that CME Clearing is ready to handle the situation of negative underlying prices in major energy contracts and to give all of our clearing firms, customers, and partners a view into what the CME Clearing plan is so that each of our partners can do their own respective planning for this potential situation." Compl. ¶ 35. The upshot of the advisory was to let the market know that there was high market volatility in certain contracts, including oil contracts. The advisory also announced plans to support the possibility of negative price options. *Id.*

On April 15, 2020, the CME issued another advisory indicating that firms would be able to test negative future options. Compl. ¶ 36. On the morning of April 20, 2020, the CME issued a third advisory warning that crude oil futures could fall into the negatives. *Id.* ¶ 37. By the end of the trading day, the futures dropped from $0 to -$37.62. *Id.* ¶ 38. During this time, Plaintiffs were locked into their investment positions; that is, Plaintiffs were unable to place orders below zero and could not modify, offset, or exit their positions. *Id.* ¶ 52.

3

At no time prior to April 20, 2020, did Defendants alert their clients, including Plaintiffs, that futures contracts could go negative. Compl. ¶ 63. Nor did Defendants take any action to permit their clients to place orders when the price reached zero and declined into negative pricing, increase the margin before this occurred, or liquidate accounts promptly when the accounts became under-margined. *Id.* ¶ 64. Further, Defendants did not contact their clients when the market hit zero to afford them the option of exiting, modifying, or offsetting their positions by placing an order. *Id.* ¶ 65.

Defendants provided Plaintiffs with a risk disclosure agreement when Plaintiffs signed up for an account. Compl. ¶ 39. The agreement did not warn Plaintiffs that that prices could fall into the negatives. *Id.*

Plaintiffs then filed this class action lawsuit against Defendants, asserting claims for violations of the CEA and 17 C.F.R. § 180.1(a)(3), breach of the implied covenant of good faith and fair dealing, violation of Section 6b(e)(3) of the CEA, negligence and gross negligence, and breach of contract. *See* Compl. Defendants have filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, claims alleging fraud must also satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And Rule 9(b)'s heightened pleading standard applies to securities fraud claims. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). So, generally speaking, Rule 9(b) requires a complaint to "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal citation omitted). Put differently, a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks and citation omitted).

## Analysis

### I. Count I – Commodity Exchange Act

In Count I, Plaintiffs bring a securities fraud claim and allege that Defendants violated 7 U.S.C. § 9 of the CEA and 17 C.F.R. § 180.1(a)(3)—a corresponding regulation.

The CEA "seeks to curb price manipulation, ensure the financial integrity of commodities transactions, avoid systemic risk, promote market participants from fraud or abusive sales practices, and promote responsible and fair competition within the commodities markets." *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 886 (7th Cir. 2019). 17 C.F.R. § 180.1(a)(3) provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, in connection with any . . . contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly . . . Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

To state a claim for federal securities fraud, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant, (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Cornielsen*, 916 F.3d at 598. As stated above, a securities fraud claim must satisfy the heightened pleading standard of particularity under Rule 9(b). *Id.* Accordingly, here, Plaintiffs must have plead each element of their securities fraud claim with sufficient particularity, describing the "who, what, when, where, and how of the fraud." *Id.* (internal quotation and citation omitted).

### A. Material Misrepresentation or Omissions

Plaintiffs allege Defendants committed three material omissions by failing to: (1) notify Plaintiffs that crude oil prices could go to a price below zero and trade in the negative, (2) liquidate Plaintiffs' contracts in a commercially reasonable time when the price was dropping on April 20, 2020, and (3) provide Plaintiffs with an option to exit or otherwise modify their positions by placing an order via a means other than Defendants' automated order platforms. Compl. ¶¶ 2, 88–89. To successfully state a claim for omission, a plaintiff must specify each statement that was misleading and the reason why it was misleading. *Cornielsen*, 916 F.3d at 599.

Plaintiffs first allege that Defendants "failed to notify their customers of material information regarding the crude oil markets, that it had the potential to go below zero, although it was clear based upon the CME's advisory that the contract had the potential to go to zero." Compl. ¶ 88. Defendants argue that to plead a fraud claim based on an omission, that is a failure to inform, Plaintiffs must plead the existence of a duty to disclose the allegedly omitted information R. 13-1, Memo. Dismiss at 5 (citing *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017)). Defendants assert that the Futures Client Agreement, however, dispels the notion that Defendants owed Plaintiffs any duty to notify Plaintiffs of market trends. *Id.* at 5–6. Plaintiffs counter that brokers have a fiduciary duty to their clients and that Defendants never informed Plaintiffs that their futures were likely to go negative. Resp. at 5 (citing *Scott v. The Dime Savings Bank of N.Y.*, 866 F. Supp. 1073, 1079 (S.D. N.Y. 1995). Defendants' argument carries the day.

7

The Futures Client Agreement states: "Customer agrees: AMP is not acting as a fiduciary, commodity trading advisor, investment advisor, or commodity pool operator with respect to the Customer or any Contract or Account." Memo. Dismiss at 5 (citing Futures Client Agreement at 2). The Futures Client Agreement further provides: "It is my responsibility, not the Firm's responsibility, to risk-manage my Account. Firm is not responsible for any resulting losses, damages, positions, and strategy or system ramifications that any of the aforementioned risk-reducing or position-reducing actions, executed or not, may have caused." *Id.* at 5–6 (citing Futures Client Agreement at 20). The Futures Client Agreement also warned that trading is volatile and risky *Id.* at 6. In relevant part, the Futures Client Agreement provides: "Customer acknowledges that trading in Contracts is speculative, involves a high degree of risk and is suitable only for persons who can assume risk of loss in excess of their margin deposits." *Id.* (citing Futures Client Agreement at 7). Notably, Plaintiffs' response fails to point to any duty arising from the Futures Client Agreement.

In short, because Plaintiffs fail to identify the source of any duty which required Defendants to inform Plaintiffs of market trends in light of the express language in the Futures Client Agreement, this allegation does not constitute a material omission.

Plaintiffs next allege that Defendants failed to liquidate Plaintiffs' contracts at a commercially reasonable time. Compl. ¶ 89. Defendants contend that Plaintiffs fail to identify the source of any duty to do so. Memo. Dismiss at 7. Plaintiffs concede in

8

their response that the Futures Client Agreement does not require Defendants to liquidate Plaintiffs' positions, but posit that Defendants should not be relieved of all responsibility. Resp. at 6. Again, the Futures Client Agreement undermines Plaintiffs' claim. The Futures Client Agreement provides: "If the market moves against your position . . . you *may* be called upon to pay substantial additional funds on short notice to maintain your position." Memo. Dismiss at 6 (citing Futures Client Agreement at 8) (emphasis added). In other words, the Futures Client Agreement gives the Defendants the right, but not the obligation, to liquidate Plaintiffs' positions. Because Plaintiffs fail to identify any duty to liquidate Plaintiffs' contracts at a commercially reasonable time, this allegation does not amount to a material omission.

Defendants' third alleged omission is that Defendants failed to provide Plaintiffs with the ability to exit or otherwise modify their positions by placing an order via a means other than Defendants' automated order platforms given that Defendants' platforms could not recognize negative pricing. Compl. ¶ 89. Defendants acknowledge that Plaintiffs allege that they made several attempts to exit their positions and could not exit them. Memo. Dismiss at 8–9 (citing Compl. ¶ 44). However, Defendants again point to the Futures Client Agreement to undermine Plaintiffs' claim. Defendants argue that Plaintiffs were warned of the risks associated with electronic trading platform failures. Defendants. Memo. Dismiss at 9–11. Plaintiffs respond that the Futures Client Agreement disclaimed liability premised

9

upon software glitches, not on the fact that the platform was not designed to address negative trading. Resp. at 6.

The Futures Client Agreement informed Plaintiffs that: "In the event of system or component failure, it is possible that, for a certain time period, you may not be able to enter new orders, execute existing orders, or modify or cancel orders that were previously entered." Futures Client Agreement at 11. The Court agrees with Plaintiffs that they do not suggest any sort of system failure or computer error on the part of the electronic trading platforms, so this provision is inapplicable.

Defendants also maintain that the electronic trading platforms Plaintiffs used were not under Defendants' control. Memo. Dismiss at 9. Rather, Plaintiffs had to enter into a separate contract with independent electronic trading platform companies in order to execute future trades with Defendants. *Id*. Contrary to Defendants' suggestion, the Court cannot consider evidence outside the pleadings at the motion to dismiss stage, such as whether Defendants owned, maintained, or operated the platforms Plaintiffs used. *See Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713–14 (7th Cir. 2013).

Lastly, Defendants assert that while they could not adjust the electronic trading platform because they did not own the platform, they did provide customers a 24-hour Trade Desk to assist customers, and Plaintiffs fail to allege that they attempted to utilize the Trade Desk. Memo. Dismiss at 9–10. The Futures Client Agreement provides that: "AMP Global Clearing provides a 24-hour trade desk for customers in an emergency situation, such as, but not limited to, loss of internet

10

connection and the customer cannot offset current open position and/or cancel any working orders themselves." *Id.* at 10. Defendants argue that Plaintiffs fail to allege that they utilized the Trade Desk to request any assistance when they were unable to modify or offset their trading positions. *Id.* The Court agrees and finds that Plaintiffs have failed to allege a material omission or misrepresentation.

In short, the Court finds that Plaintiffs fail to plausibly allege a material misrepresentation or omission by Defendants. While the Court could end its analysis at this juncture, in the interest of completeness, the Court addresses the second element Defendants attack in their motion, scienter.

### B. Scienter

Defendants next argue that Plaintiffs' complaint fails to adequately allege a securities fraud claim as the complaint fails to allege scienter, and even if Plaintiffs did, Defendants had a motive to inform their customers since Defendants would be liable to cover any losses. Memo. Dismiss at 12. Plaintiffs counter that the complaint alleges that CME issued warnings that were not heeded or forwarded by Defendants to Plaintiffs, and that Defendants did not address the warnings in any meaningful way. Resp. at 7. Defendants' conduct, insist Plaintiffs, was so reckless that it rises to the level of willfulness, which is equated with scienter. *Id.* at 7–8 (citing *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).

Scienter requires a defendant's intention "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 308 (2007). However, contrary to Defendants' contention, although "motive can be a relevant consideration . . . the

11

absence of a motive allegation . . . is not fatal for allegations must be considered collectively." *Id.* at 325. Instead, to holistically ascertain the requisite intent, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* 326.

Here, the Complaint does not contain allegations that allow the Court to infer that Defendants made any of the alleged omissions with an intent to deceive or defraud. First, the Court agrees with Defendants that Plaintiffs fail to allege that Defendants had any motive to commit fraud. Memo. Dismiss at 12. Second, Defendants accurately point out that Plaintiffs and Defendants possessed aligned interests because Defendants would have been required to cover any unsecured losses. *Id.*; *see also ADM Investor Servs., Inc. v. Collins*, 515 F.3d 753, 756 (7th Cir. 2008) (explaining that if an investor is unable to meet a margin call, "[t]he futures commission merchant then is on the hook, for it is a condition of participation in these markets that each dealer guarantee customers' trades"). Given that Plaintiffs fail to allege motive and considering Defendants possessed aligned interests with Plaintiffs, the allegation of scienter is insufficient.

Because Plaintiffs have failed to allege the first two elements of a securities fraud claim under 7 U.S.C. § 9 and 17 C.F.R. § 180.1(a)(3), the Court grants Defendants' motion with respect to Count I and dismisses Count I without prejudice.[5]

---

[5] Defendants do not argue that Plaintiffs have failed to allege reliance and loss, so the Court does not address these elements.

12

## II. Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs admit in their response that the arguments contained in the Motion to Dismiss are meritorious and do not defend this claim. Resp. at 9–10. The Court grants Defendants' motion as it relates to Count II and dismisses it with prejudice.

## III. Count III – Commodity Exchange Act Section 6b(e)(3)

In Count III, Plaintiffs purport to state a claim under 7 U.S.C. § 6b(e)(3) of the CEA, which states in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, . . . or of any facility of any registered entity, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery . . . to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

6 U.S.C. § 6 b(e)(3).

Defendants move to dismiss this count on the basis that it fails to meet Rule 8's requirement that a claim be sufficiently intelligible. Memo. Dismiss at 13. Plaintiffs respond that the count satisfies Rule 8 as it provides a short statement of the claim showing that they are entitled to relief. Resp. at 8–9. The Court disagrees with Plaintiffs.

Count III's sole allegation is that "Plaintiffs incorporate the allegations of paragraphs 1 through 96 as if fully set forth herein." Compl. ¶ 97. This bare bone allegation fails to satisfy Rule 8's pleading requirement. There is, however, a more fundamental flaw in Count III—it is premised on the same facts as Count I. The Court has already found that Count I fails to plausibly state a claim under the CEA.

13

Therefore, Count III fails as well. As such, the Court grants Defendants' motion as to Count III for the same reasons as Count I and dismisses it without prejudice.

### IV.     Counts IV & V – Negligence & Gross Negligence

In Counts IV and V, Plaintiffs allege that Defendants were negligent and grossly negligent through their omissions detailed in Count I. To state a cause of action for negligence under Illinois law, a plaintiff "must allege facts sufficient to establish three elements: (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) breach of that duty, and (3) an injury proximately caused by that breach." *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 2015). To state a cause of action for gross negligence, a complaint must allege facts demonstrating "a high degree of negligence, an element of recklessness and the absence of the slightest degree of care." *Lindstrom v. TD Ameritrade, Inc.*, 2020 WL 7398792, at *5 (N.D. Ill. Dec. 17, 2020) (quoting *Samoylovich v. City of Chi.*, 2019 WL 1462194, at *8 (Ill. App. Ct. 2019)).

Defendants move to dismiss Counts IV and V on the grounds that the claims are precluded by the Illinois economic loss rule, also known as the *Moorman* Doctrine, as these counts only allege economic losses. Memo. Dismiss at 14. Under the *Moorman* Doctrine, a plaintiff cannot recover "in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E. 2d 443, 453 (Ill. 1982)); *see also In re Chi. Flood Litig.*, 680 N.E.2d 265, 274 (1997). Plaintiffs retort that the economic loss rule does not apply here because

14

this situation is more similar to accounting malpractice, so the proper remedy should arise from tort law. Resp. at 9 (citing *Congregation of the Passion v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (1994)).

The Court finds that Counts IV and V seek purely economic losses and thus are precluded by the economic loss doctrine. Plaintiffs do not allege any duty owed by Defendants, other than that created by contract. As for the only case cited by Plaintiffs, *Congregation,* that case is distinguishable. In *Congregation*, the plaintiff sued an accounting firm for losses it suffered as a result of allegedly inaccurate financial statements. 636 N.E.2d at 508–09. The Illinois Supreme Court reasoned that even though a client contracts with an accountant regarding some general matters, the accountant must still make his own decisions about many significant matters, and his or her final decision is "is not necessarily contingent on the contract he executes with his client." *Id.* at 514. The court found that an accountant's knowledge and expertise cannot be memorialized by contract, but is independent of his or her contractual obligations. *Id.* at 515. As such, the court held that the economic loss doctrine did not bar recovery in tort for a breach of an extracontractual duty. *Id.* This case, in contrast, does not involve the accountant-client relationship, but rather involves a securities commodities broker in the business of accepting orders for the purchase or sale of a commodity for future delivery, a service that is defined by an agreed-upon contract. Plaintiffs fail to present any coherent argument for expanding *Congregation* beyond the accountant-client relationship. *See Integra Healthcare, S.C.*

15

*v. APP of Ill. H.M. PLLC*, 2019 WL 3766122, at *4–5 (N.D. Ill. Aug. 9, 2019) (refusing to expand *Congregation* to attorney-client relationship).

If the *Moorman* doctrine applies, certain exceptions may revive a negligence or gross negligence claim. But Plaintiffs admit that the exceptions "very clearly do not apply here." Resp. at 9.[6] The Court agrees with Defendants that the only duty owed to Plaintiffs was established by the contract between the parties, the Futures Client Agreement, and finds that the *Moorman* doctrine applies and bars Plaintiffs' negligence and gross negligence claims. R. 16, Reply at 4. The Court grants Defendant's motion with respect to Counts IV and V and dismisses these counts with prejudice as Plaintiffs neither suggest how they might cure the defects nor request leave to amend in the event of dismissal.[7] *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with

---

[6]Illinois law recognizes three exceptions to the *Moorman* doctrine: "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (internal quotation and citation omitted).

[7]The Court notes that although neither Plaintiffs nor Defendants cite to the opinion or filed a motion to add the opinion as supplemental authority, another court in this District recently granted a motion to dismiss a complaint raising similar claims. *See Lindstrom*, 2020 WL 7398792.

prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in . . . dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint.").

### Count VII: Breach of Contract[8]

Plaintiffs admit the arguments contained in the Motion to Dismiss are meritorious and do not defend this claim. Resp. at 9–10. The Court grants Defendants' motion as it relates to Count VII and dismisses it with prejudice.

### Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [13] and dismisses Counts II, IV, V and VII of Plaintiffs' Complaint with prejudice. The Court dismisses Counts I and III of Plaintiffs' Complaint without prejudice. The Court grants leave to Plaintiffs, if they so choose, to file an amended complaint by December 21, 2021. If Plaintiffs do not file an amended complaint by this date, the Court will dismiss this case with prejudice and will terminate this case.

Dated: November 30, 2021

                                                                        United States District Judge
Franklin U. Valderrama

---

[8] The Court notes that, as Plaintiffs acknowledge in their response, there is no Count VI in the Complaint. Resp. at 9–10. Accordingly, even though the Court refers to Count VII in this Opinion as Count VII to maintain consistency with the Complaint, there are only six counts.